IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA        ) | |
| ) | |
| vs.                             ) | CRIMINAL ACTION 08-00256-KD |
| ) | |
| TASHA MICHELLE BLACKBURN,       ) | |
| ) | |
|     Defendants.                  ) | |

## ORDER

This matter is before the Court on defendant's motion to suppress (doc. 22), the response filed by the United States (doc. 30), defendant's suppression memorandum (doc. 39) and the United States' supplemental response (doc. 40).[1] A hearing on the motion was held before the undersigned on September 11, 2008. Present for the hearing were defendant Tasha Michelle Blackburn; her defense counsel, Assistant Federal Defender Christopher Knight and Assistant Federal Defender Peter Madden; and counsel for the United States, Assistant United States Attorney Gloria Bedwell. On request of the court, the parties have submitted their supplemental briefs on the motion and response.

Blackburn moves the court to suppress and dismiss on the basis that her right to be free from unreasonable search under the Fourth Amendment was violated. Specifically, Blackburn argues that Officer Entrekin did not have reasonable suspicion to support an investigatory stop

---

[1] Blackburn is charged with conspiracy to posses with intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of methamphetamine (Count One), possession of a List I, chemical, pseudoephedrine with knowledge and reasonable cause to believe that it would be used to manufacture a controlled substance (Count Two) and forfeiture (Count Five).

and therefore, all evidence obtained should be suppressed.[2]

Upon consideration of the pleadings, the evidence presented at the hearing, and for reasons more fully set forth herein and on the record, the court finds that Officer Entrekin did not have reasonable suspicion to initiate an investigatory stop and thus any evidence discovered as a result of the inventory of the car is suppressed.  However, the court also finds that intervening circumstances and defendant's voluntary consent to search her house dissipate the taint of the prior illegal stop for purposes of evidence found during the search of the house.  Accordingly, the motion to suppress evidence is GRANTED in part and DENIED in part.[3]

Initially, Blackburn moved to suppress on basis that making an allegedly illegal u-turn was not sufficient for Officer Entrekin to have a reasonable suspicion of a traffic offense to initiate a traffic stop.  The United States responded that the stop of Blackburn's vehicle for making an illegal u-turn was a legally conducted traffic stop.  However, at the hearing on the

---

[2]  The additional grounds to suppress asserted by defendant were addressed at the hearing.

[3]  At the hearing, the court reserved ruling on the issue of whether the initial investigatory stop was based upon a reasonable suspicion of illegal activity.  However, the court made the following findings on the record <u>based on the assumption that the initial stop was justified</u>:
  1)The search of the car pursuant to an inventory before towing was legitimate based on defendant's suspended license status;
  2) The detention of Blackburn after it was discovered that she had a suspended license was legitimate based on Blackburn's inconsistent statements and the discovery during the inventory of Blackburn's car of a large quantity of psuedophedrine pills,
  3) Detective Stone appropriately advised Blackburn of her Miranda rights before he questioned her.  Blackburn indicated that she understood her rights and knowingly and voluntarily waived those rights.
  4) Because the consent to search Blackburn's residence was given voluntarily and knowingly, the search was legitimate.
  5) The testimony of Officer Samuel Entrekin and Detective Jeffrey Stone was fully credible.

motion to suppress, Officer Entrekin testified that the investigatory stop was made because of suspicious activity and not because of an illegal u-turn.  Thus the question is whether Officer Entrekin had articulable reasonable suspicion to stop Blackburn's vehicle based on factors other than a traffic violation.

In regard to the investigatory stop of Blackburn, the court makes the following factual findings.  The stop of Blackburn's vehicle occurred at approximately 11:45 p.m. in a dark and remote area of Mobile County. Officer Entrekin had no prior information of any drug involvement concerning Blackburn and was not called to the area for any particular purpose. Officer Entrekin was on routine patrol on Calvert Road, a narrow rural road, and was heading south toward Airport Boulevard[4].  He was approximately seventy-five to a hundred yards from Airport Boulevard when he encountered Blackburn.  Blackburn was traveling east on Airport Boulevard.  Entrekin believed Blackburn was about to turn onto Calvert Road, thus, he slowed to allow room for Blackburn's vehicle to turn.  However, as his "headlights came into view, the vehicle paused in the middle of Airport Boulevard and then slowly made a hundred and eighty degree turn back onto westbound Airport, and the front end of the vehicle left the roadway for a short time and went back up on to Airport Boulevard".  When the vehicle made the u-turn, Entrekin's patrol car was illuminated in Blackburn's headlights.  Entrekin believed the u-turn was suspicious because it appeared as though Blackburn made the u-turn upon seeing the police car.  After Entrekin turned on the police lights, Blackburn immediately stopped her vehicle on the side of the road.

---

[4] The evidence showed that in this area Airport Boulevard is a two-lane paved highway as opposed to other areas where it is a four-lane with a boulevard in the center.

3

Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810-11(1996).  However, where there is no reasonable suspicion that a traffic violation has occurred, a police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 675 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1880 (1968)).  In other words, an investigatory stop is justified when the officer sees "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot."  Terry, 392 U.S. at 30, 88 S.Ct. at 1884. Reasonable suspicion requires "at least a minimal level of objective justification for making the stop." Wardlow, 528 U.S. at 123, 120 S.Ct. at 676.  The stop is reasonable when "the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Miller v. Harget, 458 F.3d 1251, 1259 (11th Cir. 2006), cert. denied, 127 S.Ct. 2429 (2007).  Thus, Officer Entrekin legally stopped defendant Blackburn "if, under the totality of the circumstances, . . . [he] had an objectively reasonable suspicion that [Blackburn] had engaged, or was about to engage, in a crime." United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004) (citations and internal quotations omitted).  However, "reasonable suspicion must be more than an inchoate and unparticularized suspicion or hunch.  Thus while reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for

making the stop." Id. (citations and internal quotations omitted).  "It does not require [Officer Entrekin] to catch [Blackburn] in a crime.  Instead, a reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." Id. (citations and internal quotations omitted).

In Wardlow, the Supreme Court held that presence in a high crime area combined with flight or nervous, evasive behavior was sufficient to establish a reasonable suspicion to stop an individual.  The Court explained that

> An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a "high crime area" among the relevant contextual considerations in a Terry analysis. Adams v. Williams, 407 U.S. 143, 144, 147-148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
>
> In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. United States v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Florida v. Rodriguez, 469 U.S. 1, 6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (per curiam); United States v. Sokolow, *supra*, at 8-9, 109 S.Ct. 1581. Headlong flight-wherever it occurs-is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. See United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). We conclude Officer Nolan was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further.

Illinois v. Wardlow, 528 U.S. 119, 124-125, 120 S.Ct. 673, 676 (2000).

As pointed out by the dissent in <u>Wardlow</u>, the Court has not adopted a "'bright-line rule' authorizing the temporary detention of anyone who flees at the mere sight of a police officer." 528 U.S. at 123, 120 S. Ct. at 676.  Neither has the Court held that "the fact that a person flees upon seeing the police can never, by itself, be sufficient to justify a temporary investigative stop...." <u>Id</u>.  Rather, the Court has indicated that you must look to the "totality of the circumstances" to determine whether the officer had a "particularized and objective basis for suspecting legal wrongdoing" and thus, a reasonable suspicion. <u>United States v. Arvizu</u>, 534 U.S. 266, 273, 122 S.Ct. 744 (2002) (internal quotation marks omitted).  Additionally, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might elude an untrained person." <u>Id.</u>

Upon consideration of the evidence, the court finds that the totality of the circumstances does not establish that Officer Entrekin had reasonable suspicion to stop Blackburn.  It was objectively reasonable for Officer Entrekin to believe that Blackburn was attempting to evade the police based on Blackburn's pause then immediate u-turn upon seeing his patrol car.  However, there is no evidence of any other reason for the stop other than Blackburn's evasive u-turn.  For instance, although the stop occurred in a rural area late at night, there was no evidence presented that it was a high crime area or an area where a crime was suspected.

The Eleventh Circuit has stated that "[w]hile flight is not proof of wrongdoing, it is indicative of such.... Innocent persons might run from police officers; but flight creates an ambiguity; and the officers may stop the person to resolve the ambiguity." <u>United States v. Franklin</u>, 323 F.3d 1298, 1302 (11th Cir. 2003) (citing <u>Wardlow</u>, 120 S. Ct. at 676-677).  This

statement from the Eleventh Circuit certainly might lead law enforcement, and a trial judge, to believe flight is enough to establish reasonable suspicion.  However, in applying Wardlow, the Eleventh Circuit has consistently relied on additional facts beyond the mere flight of the individual.[5]  See United States v. Gordon, 231 F.3d 750, 756 (11th Cir.2000) ("There may be perfectly innocent reasons in certain circumstances for someone to walk or even run away from a location upon the approach of a law enforcement officer. But Gordon's conduct in this case-making eye contact with the officer, thereafter moving quickly toward an adjacent car, entering that car, and then driving away in the opposite direction from the officers- coupled with the officers' knowledge of frequent unlawful activity in the neighborhood where Gordon had been standing, provided adequate grounds for this Terry stop."); United States v. Franklin, 323 F.3d at 1301 ("The facts include Franklin's presence in a problem area, at night, underneath a no loitering sign, and his flight from the officers. The facts are sufficient to establish reasonable suspicion."); United States v. Hunter, 291 F.3d 1302 (11th Cir.2002)(Defendant was in a high crime area, known for drug and firearm arrests, was observing unlawful gambling, had a bulge in his waistband and when he saw the police approach began to walk quickly away.)  Accordingly, because Blackburn was stopped solely because of her evasive u-turn, the court finds that the officer lacked reasonable suspicion to make a Terry stop.

However, the inquiry does not end with the determination that the initial stop was illegal. Rather the next question "is whether, granting establishment of the primary illegality, the

---

[5] The court notes that the cases relied upon by the government, which are pre-Wardlow, also present facts in addition to the flight to support reasonable suspicion.  In U.S. v. Macias, 546 F.2d 58 (5th Cir. 1977), the high speed flight occurred in close proximity to a border crossing.  In U.S. v. Duguay, 93 F.3d 346 (7th Cir. 1996), the officer had knowledge that the defendant associated with a drug organization.

evidence to which [the] instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963).  The Supreme Court has cautioned that "[s]uppression of evidence, however, has always been our last resort, not our first impulse." Hudson v. Michigan, 574 U.S. 856, 591,126 S.Ct. 2159, 2163 (2006).  Thus, the court should look to any intervening or attenuating circumstances which would vitiate the need to suppress the evidence. Id. at 593, 126 S. Ct.  At 2164 ("Attenuation can occur, of course, when the causal connection is remote. Attenuation also occurs when, even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.").

   The court makes the following additional findings of fact. After the initial stop, it was quickly discovered that Blackburn had a suspended license.  As a result, Officer Entrekin called for backup and requested a tow truck as it was department policy to impound a car driven by an unlicensed driver.  A back-up officer arrived within a few minutes and inventoried the car in preparation for towing.  While Officer Entrekin was writing a citation for a suspended license, the back-up officer discovered one hundred pseudoephedrine pills in Blackburn's car.  Based on this discover, a drug detective was called to the scene.  Detective Jeffrey Stone arrived approximately five minutes later and questioned Blackburn about the pills.  During this encounter, Detective Stone learned that Blackburn's residence was only a few hundred yards away from where she had been stopped.  Due to the inconsistent statements about the origin of the pills, Detective Stone asked for permission to search Blackburn's house.  Detective Stone explained to Blackburn that she was not under arrest and that she did not have to consent.

Blackburn consented to the search.  Because it was determined that Blackburn lived so close, Detective Stone allowed Blackburn to drive her vehicle home rather than impound it.  After arriving at the house, Blackburn again consented to the search and signed a consent form at approximately 1:11 a.m. (An hour and a half after the initial stop).  Before signing the form, Detective Stone again explained to Blackburn that she did not have to consent and that she had a right to deny consent.  The form also recited these rights.  Moreover, during the search it was discovered that Blackburn's bedroom was locked, a key was requested and Blackburn gave the officers the key.  Thus, it is evident that Blackburn's consent was voluntarily and knowingly given several times.  Methamphetamine, methamphetamine smoking pipes, cocaine residue, scales with white residue, a gun and documents which the government contends are drug ledgers were found in Blackburn's bedroom.

The court finds that the evidence discovered in the inventory of Blackburn's car is directly related to the illegal stop and was "come at by exploitation of that illegality."  Wong Sun, 371 U.S. at 488, 83 S. Ct. at 417.  Therefore the items seized from the car are suppressed.  However, there are intervening circumstances which make the items seized from the search of the house admissible, specifically Blackburn's consent.

"For consent given after an illegal seizure to be valid, the Government must prove two things: that the consent is voluntary, and that the consent was not a product of the illegal seizure." United States v. Santa, 236 F.3d 662, 676 (11th Cir. 2000) (citation omitted).  In Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254 (1975), the Supreme Court delineated three factors to be considered in determining whether the voluntary consent was obtained by exploitation of the illegal seizure: "[t]he temporal proximity of the [seizure] and [the consent], the presence of

intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct . . . ." 422 U.S. at 603-04, 95 S.Ct. at 2261-2262.  Other factors include whether Blackburn was given an opportunity to consult with an attorney or given by the officer "any appreciable time in which to reflect upon whether to give or not to give [her] consent to search." United States v. Valdez, 931 F.2d 1448, 1452 (11th Cir. 1991)

In this case there was certainly no flagrant official misconduct when Officer Entrekin stopped the vehicle; rather the law is less than clear whether flight alone is sufficient to form the basis for reasonable suspicion.  Next, the time between the illegal stop and the last consent was approximately one hour and a half.  Blackburn certainly had appreciable time to reflect on her decision to give consent.  It was made clear to Blackburn that she was not under arrest and did not have to consent.  The attenuating circumstances occurred when Blackburn was allowed to drive her car to her house away from the initial stop and was then given the opportunity to withdraw her consent before the search occurred.  At that point she had secured her car and was at her own home when she again consented.  See United States v. Berry, 670 F.2d 583, 604-605 (5th Cir. 1982)(en banc)(Defendant's illegal arrest did not taint their consent to search where the defendants were told they were free to leave, allowed to consult with each other and offered an opportunity to consult with counsel.)  Accordingly, the court finds that Blackburn's consent was voluntary and not a product of the initial illegal stop, thus the items seized at the residence are not subject to suppression.

DONE and ORDERED this 26th day of September, 2008.

                                                    s  / Kristi K. DuBose
                                                  **KRISTI K. DuBOSE**
                                                  **UNITED STATES DISTRICT JUDGE**