IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


TASHA MICHELLE BLACKBURN,      *
                               *
      Petitioner,              *
                               *   CIVIL ACTION NO. 11-00727-WS-B
vs.                            *   CRIMINAL NO. 08-00256-WS-B
                               *
UNITED STATES OF AMERICA,      *
                               *
      Respondent.              *


## REPORT AND RECOMMENDATION

This matter is before the Court following a remand from the Eleventh Circuit Court of Appeals. (Doc. 256). The Court remanded the case for consideration of Petitioner Tasha Michelle Blackburn's claim that attorney Tom Haas rendered ineffective assistance of counsel. Specifically, the appeals court identified the following issues for resolution: whether Haas rendered ineffective assistance of counsel by (1) failing to discuss with Blackburn the government's plea offer and inform her of the benefits of accepting it; (2) failing to inform Blackburn of the potential results of proceeding to trial rather than pleading guilty, even assuming Haas lacked access to the government's plea offer; and (3) wrongly advising Blackburn that she could not be convicted of conspiracy to possess with intent to distribute. (Id. at 3).

Following remand, the parties were afforded an opportunity to

submit supplemental briefing on the above-referenced issues. (Doc. 258). In the Government's supplemental brief (doc. 259), the Government argues that at the evidentiary hearing conducted on July 8, 2014, Blackburn's testimony focused on attorney Brad Murray's performance, and did not identify any alleged ineffective assistance by trial counsel Tom Haas. According to the Government, Blackburn has failed to carry her burden of establishing that Haas was ineffective, and has also failed to establish that she was prejudiced because through all stages of her prosecution, she continued to insist that she was innocent. (Id.).

In her supplemental brief (doc. 261), Blackburn contends that Haas' legal strategy was based on "a complete lack of understanding of the law on conspiracy" and that she relied on his advice and proceeded to trial. Blackburn contends that a new evidentiary hearing is required to resolve questions regarding Haas' performance and strategy, and to determine whether he received the plea agreement from either Murray or from the Government.(Id.).

Based on a review of the parties' supplemental submissions, the evidence tendered at the prior evidentiary hearing conducted on July 8, 2014, and the case file, the undersigned finds that a new evidentiary hearing is not required to resolve the issues before the court.

## I. BACKGROUND

A federal grand jury returned an indictment against Blackburn and her co-Defendant Barry Jay Sullivan in July 2008. (Doc. 1). Blackburn was charged in count one of the indictment with conspiring to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846, and in count two, she was charged with possession of pseudoephedrine with knowledge that it would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 841(c)(2). (Id.) The Court initially appointed Fred Tiemann, an assistant Federal Defender, to represent Blackburn; however, Tiemann requested permission to withdraw on the ground that a colleague in his office was representing an individual who was expected to provide testimony implicating Blackburn. (Docs. 16, 46).

As a result, Tiemann was permitted to withdraw, and Paul Bradley Murray was appointed to represent Blackburn on September 28, 2008. (Docs. 48, 49). Less than a month later, on October 16, 2008, Murray filed a motion to withdraw on the ground that Blackburn had retained Tom Haas to represent her. (Doc. 62). Murray's motion was granted, and Haas assumed representation of Blackburn in October 2008. (Doc. 67). Following a jury trial, Blackburn was convicted

of conspiring to distribute 50 grams or more of methamphetamine1, and on August 3, 2009, she was sentenced to 300 months in prison, followed by three years of supervised release.[2] (Doc. 143).

Haas requested and was granted permission to withdraw, and Greg Hughes was appointed to represent Blackburn on appeal. (Docs. 173, 174, 175). In an opinion and judgment dated September 30, 2010, the Eleventh Circuit affirmed Blackburn's conviction and sentence.[3] (Doc. 190).

Proceeding *pro se*, Blackburn timely filed a motion to vacate her sentence, and argued that her sentence should be set aside due to ineffective assistance rendered by Brad Murray, her former trial counsel, Tom Haas, her trial counsel, and Greg Hughes, her counsel on appeal. (Doc. 195). Blackburn set forth various alleged instances of ineffective assistance of counsel, including claims that her counsel continually pressured her to enter a guilty plea, and that her counsel failed to communicate to her a proposed plea agreement offered by the Government prior to her proceeding to trial. (Id.).

_____

[1] Before trial, the Government's oral motion to dismiss count two of the indictment was granted. (Doc. 203)

[2] The judgment was entered on August 24, 2014. (Id.)

[3] On appeal, Blackburn argued that the Court erred in denying her motion to suppress and in permitting a police officer to testify as an expert during the trial. (Doc. 190)

4

In opposing Blackburn's motion, the Government contended that Blackburn failed to establish the existence of a plea agreement, and further failed to demonstrate that she was prejudiced by the performance of her attorneys, because throughout the proceedings, she insisted upon her innocence and on going to trial. (Doc. 198).

Blackburn filed a plea agreement that she obtained from Murray in 2012, and asserted that she learned from her former counsel that the Government had communicated a favorable plea agreement that her trial counsel failed to communicate to her. (Doc. 202 at 4-5). In another filing, Blackburn asserted that she was prejudiced by her counsel's failure to communicate the plea offer to her. (Doc. 214 at 3-4). She also argued that due to circumstances beyond Tiemann and Murray's control, the plea agreement was not communicated or explained to her; however, such does not excuse Haas' failure to go over the plea agreement with her, and "his erroneous advice that using and selling drugs to others who also use and sell drugs is not a conspiracy." (Doc. 214 at 10).

Due to the conflict regarding the existence of a plea agreement, and what was communicated to Blackburn regarding the plea agreement, an evidentiary hearing was scheduled for July 8, 2014, and Cindy Powell was appointed to represent Blackburn at the hearing. (Docs. 215, 220, 233). Blackburn testified at the July

8, 2014 hearing as did her former counsel, Paul Murray. (Doc. 249).

While Murray provided testimony that was consistent with his billing records, Blackburn's testimony was replete with inconsistencies and at odds with some of her written submissions.

According to Blackburn, at some point, she talked with each of her attorneys about entering a guilty plea, but not a plea agreement or her options. (Id. at 67). She also testified that her initial counsel, Fred Tiemann, discussed the Government's evidence against her and the sentencing guidelines. (Id. at 45-46). She further testified that Tiemann may have encouraged her to enter a guilty plea at the beginning when they were going over everything. (Id. at 66).

Blackburn acknowledged that after Tiemann was permitted to withdraw from her case due to a conflict, she received a letter from Murray dated October 6, 2008. (Id. at 49, 70, Doc. 233-2). In the letter, Murray states that he is enclosing documents that the prosecutor sent him in hopes that Blackburn would reconsider a plea agreement. (Doc. 233-2). Murray also indicates, in the letter, that he cannot advise Blackburn to accept a plea deal at that point, but he wants to dig deeper into the facts and law of her case, and meet with her later in the week to discuss the status and the prospects for trial or a plea. (Id.).

According to Blackburn, Murray met with her on two occasions while she was in a local residential drug treatment facility. (Doc. 249 at 69). Blackburn testified that only she and Murray were present during their initial meeting. At the October 8, 2008 meeting, Murray showed Blackburn a lot of documents and evidence, including photographs capturing her. (Id. at 48, 66-67). Blackburn testified, at one point, that Murray did not discuss the existence of a plea agreement with her. (Id. at 48). She later testified that Murray told her that the prosecutor had sent over a plea agreement, and that the plea agreement may have been in the documents Murray provided to her during the meeting; however, Murray did not explain the agreement to her or discuss the pros and cons of accepting the plea agreement versus going to trial. (Doc. 249 at 52-53, 56, 66-67, 69). Blackburn further testified that Murray told her that he needed more time to review the case, and that if after looking at the evidence, it pointed towards a plea, he would let her know that she needed to take a plea. (Id. at 52, 56). According to Blackburn, she did not read the plea agreement for herself until Murray sent it to her, at her request, several years later, in May 2012. (Id. at 51). Blackburn testified that she did not want to discuss anything because she was a "mess, was in the early phases

of drug treatment", and wanted to focus on her treatment.[4] (Id. at 70). She also acknowledged that she did not remember a "whole lot" about her meeting with Murray. (Id. at 72).

With respect to her second meeting with Murray, Blackburn testified that Murray showed up at the treatment center unannounced, and he kept trying to get her to sign a speedy trial waiver. (Id. at 53-56, 71-72). Blackburn testified that her treatment counselor was present at the meeting, and was upset because Murray had showed up unannounced in violation of the treatment center rules. (Id.) Blackburn also testified that Murray was adamant that she needed to sign a speedy trial waiver, and that during the meeting, her counselor picked up the telephone, and called another attorney, Tom Haas. According to Blackburn, Haas advised her against signing the speedy trial waiver, and also told her that he would call her father to make payment arrangements so that he could represent her. (Id.). Blackburn denied that Murray was terminated because she and her family believed he was pressuring her to enter a guilty plea. (Id.). She testified that Haas was retained because he was friends with her counselor and her counselor told her that he was the best

_____

[4]According to Blackburn, she entered treatment at the Home of Grace on August 28, 2008, and her initial meeting with Murray occurred more than a month later on October 8, 2008. (Doc. 249 at 53).

and that he could help her. (Id. at 71-72, 82-83). She also testified that she advised Murray that "she had no interest in doing anything" at that point other than completing the drug treatment program. (Id. at 53-56).

According to Blackburn, during Haas' representation of her, he never mentioned the plea agreement to her, and she does not know whether the plea agreement was passed along to him. (Id. at 62). Blackburn also testified that Haas told her that it was not a conspiracy to purchase drugs from someone or for someone to distribute drugs. (Id. at 72). Blackburn further testified that knowing what she knows now, she would have accepted the plea offer and would have cooperated. (Id. at 57). According to Blackburn, if Haas or someone had explained to her that the Government was not only willing to recommend a sentence at the low end of the guidelines, but was also willing to consider a 5k reduction if she cooperated, she would have accepted the plea offer and would have cooperated. (Id. at 56-57, 78).

Blackburn testified that *after* her conviction, but before she was sentenced, she wrote letters to the prosecutor in an attempt to cooperate, and that the prosecutor arranged for Blackburn to meet with the case agent. (Id. at 57, 73). Blackburn further testified that at the meeting, she provided information regarding other

individuals; however, the prosecutor told her that she was still attempting to portray herself as a victim, and was unwilling to accept responsibility for her role in the drug conspiracy; thus, her offer to cooperate was rejected. (Id. at 57-60, 73-75).

Throughout Blackburn's hearing testimony, she repeatedly stated that from day one, she readily admitted that she purchased drugs, and she never denied being a drug user. (Id. at 61, 71, 73). Blackburn also testified that had she been given the opportunity to accept the Government's plea offer, she would have received a substantially shorter sentence. (Id. at 50, 57, 73).

As noted, Murray, who at the time of the hearing was an experienced criminal attorney with over twenty years of service on this Court's Criminal Justice Act panel of attorneys, also testified at the hearing. (Id. at 19). Murray testified and presented corroborating billing records reflecting that shortly after being appointed to represent Blackburn, he traveled to a residential treatment center to meet with her on October 8, 2008 and October 10, 2008. (Doc. 233-7; Doc. 249 at 14-19, 20-27). According to Murray, prior to his initial meeting with Blackburn, he had received a written plea agreement from the prosecutor who suggested that Blackburn reconsider the Government's plea offer. (Doc. 233-1). Murray testified that he gave to Blackburn documents received from

the Government, and during his initial meeting with her at the treatment facility, he went over the discovery with her, and explained that a conspiracy requires an agreement-- an overt act, and that if a person is found to be a member of a conspiracy, that person can be held responsible for what everybody else in the conspiracy does. (Doc. 249 at 14-18, 20-27, 35-42). He testified that he also discussed with Blackburn the terms of the plea agreement, the pros and cons of accepting the plea agreement, and Blackburn's sentencing guidelines; however, he did not make a recommendation to her at that time because he was still familiarizing himself with the facts of the case. (Id.). According to Murray, he was too new to the case to make a plea recommendation at that point. (Id.) Murray testified that not only was Blackburn adamant that she was not going to enter a guilty plea, but Blackburn's father also called him, and said that he understood Murray was trying to pressure Blackburn to plead guilty; however, she was not going to do so. Murray stated that he explained to Blackburn's father that he was not trying to pressure her to enter a guilty plea, but was instead trying to get her to think about her options. (Id. at 30-31)

Murray testified that during his second meeting with Blackburn, her counselor was present, and she made clear to him that Blackburn

needed a lawyer who would not force her to enter a guilty plea, but would instead take her case to trial. (Id. at 28-39). Murray stated that in his presence, the counselor telephoned another attorney, Tom Haas, and discussed with Haas representing Blackburn. Murray stated that he explained to Haas that he was planning to seek a continuance since he had just recently been appointed to the case, and that he needed Blackburn to execute a speedy trial waiver so that they would have more time to become familiar with the case. (Id.). According to Murray, Haas advised Blackburn not to sign the waiver, and told her that he would contact her father about making payment arrangements. Murray testified that since Blackburn had opted to have Haas represent her, he requested permission to withdraw. He also testified that he gave Haas his case file, and that the plea agreement was likely included. (Id.)

Based on the record before the court, including evidence gleaned during the evidentiary hearing, the undersigned found that Blackburn has failed to establish that Murray failed to communicate the plea offer to her, and that she further failed to establish that she would have accepted the offer. The undersigned thereafter issued a report and recommendation recommending that Blackburn's petition be denied because she failed to establish her ineffective assistance of counsel claims. (Doc. 237). The report and recommendation was

adopted by the Court; however, as noted *supra*, the case has been remanded to this Court to address Blackburn's claims that Tom Haas rendered ineffective assistance of counsel. (Docs. 237, 239, 240, 256).

## II. STANDARDS OF REVIEW

Courts and the public can presume that a defendant stands fairly and finally convicted after conviction and exhaustion or waiver of any right to appeal.  See United States v Frady, 456 U.S. 152, 164, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  However, 28 U.S.C. § 2255 provides a vehicle by which federal defendants in custody may attack the validity of their sentences.  A defendant seeking relief under § 2255 must prove: (1) the sentence violated the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  Such collateral relief is an extraordinary remedy which "may not do service for a [] [direct] appeal." Frady, 456 U.S. at 165. Consequently, '[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . .A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.

The appellate process does not permit reruns." <u>Moore v. United States</u>, 598 F. 2d 439, 441 (5th Cir. 1979).

To prevail on an ineffective of assistance claim, Blackburn must satisfy the familiar two-part test established in <u>Strickland v. Washington,</u> 466 U.S. 668,104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984). First, she must demonstrate that Tom Haas made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. <u>Id.</u> at 687. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance; thus, counsel's performance is deficient only if it falls below the wide range of competence demanded of lawyers in criminal cases. <u>Id.</u> at 689. A petitioner must also show that she suffered prejudice as a result of the deficient performance. <u>Id.</u> at 687. In other words, Blackburn must show that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. <u>Id.</u> at 694. A habeas petitioner claiming ineffective assistance of counsel must carry her burden on both <u>Strickland</u> prongs, and a court need not address both prongs if the petitioner does not make a sufficient showing on one. <u>See id.</u> at 697; <u>Johnson v. Alabama</u>, 256 F. 3d 1156, 1176 (11th Cir. 2001).

In Missouri v. Frye, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and Lafler v. Cooper, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), the Supreme Court clarified that the Sixth Amendment right to effective assistance of counsel under Strickland extends to the negotiation and consideration of plea offers that lapse or are rejected. See Frye, 132 S. Ct. at 1404-08; see also Lafler, 132 S. Ct. at 1384. The Court held that counsel has a "duty to communicate formal offers from the prosecution to accept a plea," and that, in general, where such an offer is not communicated to the defendant, counsel "[does] not render the effective assistance the Constitution requires." Frye, 132 S. Ct. at 1408. The Court also held that, in order to show prejudice under Strickland's two-part test, a petitioner must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 132 S. Ct. at 1385; see Frye, 132 S. Ct. at 1409.

## III. DISCUSSION

The gist of Blackburn's contention is that but for the erroneous advice that Haas gave her about the conspiracy charge and his failure to advise her of the Government's plea offer, and the pros and cons of proceeding to trial, she would have entered a guilty plea, and would have received a substantially lower sentence. As a preliminary matter, the undersigned observes that there is nothing before the Court that suggests, let alone establishes, that the Government renewed its plea offer after Tom Haas assumed representation of Blackburn in this case. While it is clear that the Government tendered a written plea offer to Murray during his representation of Blackburn and suggested that he discuss with her reconsidering a plea offer, the credible evidence establishes that Blackburn rejected the offer, and that Murray communicated such to the prosecutor. (Doc. 249 at 36). There is nothing before the Court suggesting that the Government ever renewed the offer.

Moreover, the undersigned finds that assuming *arguendo* that Blackburn can establish that Haas' performance was deficient[5], with respect to either his alleged advice regarding conspiracy or his

_____

[5] The record does not contain any sworn testimony from attorney Thomas Haas, and the Court takes judicial notice of the fact that he passed away on March 17, 2017.
http://obits.al.com/obituaries/mobile/obituary.aspx?n=thomas-haas&pid=184574855

failure to discuss with Blackburn the potential results of proceeding to trial rather than pleading guilty, she cannot demonstrate prejudice because it is clear that she was insistent on proceeding to trial, as she was unwilling to admit her role in the drug conspiracy. Thus, she would not have entered a plea agreement that the Government would have accepted.

Under the Government's proposed agreement (doc. 233-1), Blackburn was required to plead guilty to possession with intent to distribute methamphetamine and in return, the Government agreed to recommend that Blackburn be sentenced at the low end of the sentencing guidelines. (Id.). The statutory penalty range was 5 to 40 years. (Id.). The credible evidence before the Court establishes that Murray discussed with Blackburn the Government's discovery in the case, the applicable sentencing guidelines, the terms of the plea offer, and the pros and cons of the plea offer, and that Blackburn not only rejected the plea offer, but she terminated Murray, because she and her family felt that Murray, who was appointed, was trying to pressure Blackburn into entering a guilty plea. While Blackburn repeatedly testified that Murray did not go over the plea offer, the pros and cons of the offer, the sentencing guidelines, the discovery produced by the Government or the law regarding conspiracy with her, she later acknowledged that she

remembered very little about her initial meeting with Murray. (Id. at 7). The Court can only surmise that once Murray outlined to Blackburn the Government's discovery, the nature of a conspiracy, what Blackburn was facing if she was convicted, and the pros and cons of the Government's plea agreement, she came away from the meeting believing he was encouraging her to enter a guilty plea. So, rather than sign a speedy trial waiver, which would have afforded Murray and her more time to review the case and make a decision about trial or other resolution, she chose to terminate Murray and retain Haas because she believed Haas would take her case to trial.

Interestingly, in Blackburn's §2255 filings, she asserted that she had learned from her former counsel that the government had communicated a favorable plea agreement that her trial counsel failed to communicate to her[6]. (Doc. 202 at 3). She also testified

---

[6] The undersigned finds it noteworthy that in at least two of Blackburn's §2255 filings, she contended that her trial counsel repeatedly encouraged her to enter a guilty plea. (Doc. 195 at 9, Doc. 202 at 5). In fact, Blackburn went as far as to assert that throughout the pretrial period, her trial counsel operated under the premise that she "would eventually plead out." (Doc. 195 at 9). Blackburn has since sought to distance herself from these statements because they are at direct odds with her contention that Haas advised her that you could not be convicted of a conspiracy for using and or selling drugs. It is nonsensical that he would have continually encouraged Blackburn to enter a guilty plea while also advising her that she could not be convicted of a conspiracy. It instead strongly suggests that as was the case with Murray, Blackburn likewise conveyed to Haas that she was not interested in entering a guilty

at the evidentiary hearing that but for Haas' failure to tell her about the plea agreement, the pros and cons of the agreement, and his erroneous advise regarding conspiracy, she would have accepted the agreement, and would have ended up with a substantially shorter sentence. Notwithstanding her assertions, the credible evidence clearly establishes that Murray did in fact communicate the plea agreement to Blackburn, as well as the applicable sentencing guidelines, the nature of a conspiracy, and the pros and cons of the Government's plea agreement, and rather than allow Murray to seek additional time so they could consider the agreement and prepare for trial if necessary, Blackburn terminated him because she was adamant that she was not going to enter a guilty plea[7]. Thus, her assertion that if Haas had provided her with the very information that the Court finds Murray had already provided to her, she would have opted to accept the plea agreement is simply not credible given her termination of Murray because she perceived that he wanted her

plea and insisted on proceeding to trial. This is particularly true given the credible evidence that Murray discussed the Government's plea offer with Blackburn, including the pros and cons of proceeding to trial, and she terminated his services because she believed he was pressuring her to enter a guilty plea.

[7] Blackburn also testified that her initial counsel, Fred Tiemann, went over the Government's evidence and the sentencing guidelines with her, and he probably encouraged her to enter a guilty plea. (Doc. 249 at 45-46, 66).

to enter a guilty plea, and she wanted an attorney who would take her case to trial. Accordingly, the undersigned finds that Blackburn has not established prejudice because even in the absence of Haas' alleged deficient performance, it is clear that Blackburn was insistent on going to trial.

Finally, the overwhelming evidence before the Court reflects that Blackburn rejected the Government's plea offer and was insistent on going to trial in this case because she viewed herself as a mere drug user rather than as a major drug dealer. See Osley v. United States, 751 F.3d 1214, 1224 (11th Cir. 2014)(While the petitioner's denial of guilt is not dispositive on the question of whether he would have accepted the government's plea, it is nonetheless a relevant consideration.) At the evidentiary hearing, Blackburn testified that after her conviction, she reached out to the prosecutor in an attempt to cooperate. In letters to the prosecutor, Blackburn indicated that she had useful information concerning others. The prosecutor arranged for Blackburn to meet with the case agent; however, nothing came of the meeting because notwithstanding the strong evidence against Blackburn at trial, she continued to downplay her role in the drug conspiracy, and continued to insist that she was a mere user as opposed to a drug dealer. As a result, the prosecutor concluded that Blackburn would not be a

credible witness given her refusal to acknowledge her role as a drug dealer.

Also, at Blackburn's sentencing hearing, the Court observed that throughout the proceedings, Blackburn refused to cooperate and take responsibility for her actions, and instead, persisted in downplaying her role in the drug distribution conspiracy. (Doc. 184-4 at 34). Further, in Blackburn's habeas submissions to this Court, and at the evidentiary hearing, she has repeatedly asserted that from day one, she was willing to admit that she was a drug user, and that she brought drugs. Blackburn's assertions continue to fall short of acknowledging that she was not a mere drug user, buying drugs for personal use, but she was a drug dealer in a drug distribution ring that sold and distributed a large volume of drugs. Given Blackburn's unwillingness or inability to acknowledge her true role in the drug trade, it is clear that she could not have entered into a plea agreement that the Government was willing to accept. Thus, she cannot establish prejudice with respect to Tom Haas's alleged deficient performance, and her claim is due to be dismissed as a result.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that no certificate of

appealability should be issued in this case. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a habeas petition is being denied on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

No Certificate of Appealability is warranted in this case. For the reasons discussed above, no reasonable jurist could conclude that this Court is in error in dismissing Blackburn's petition or that she should be allowed to proceed further. See Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district

court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").  It is thus recommended that the Court deny any request for a Certificate of Appealability.

## V.    CONCLUSION

For the foregoing reasons, it is recommended that Blackburn's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 195) be DENIED, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Tasha Michelle Blackburn.  The undersigned Magistrate Judge further opines that Blackburn is not entitled to issuance of a Certificate of Appealability, and as a result, she should not be permitted to appeal *in forma pauperis.*

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation

to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this **25th** day of **May, 2017.**

**/s/SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**